Dao VANG, Petitioner,

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent.

No. 96–70651.

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 12, 1997.*

Decided June 24, 1998.

* The panel unanimously find this case suitable for decision without oral argument.   Fed. R.App. P. 34(a) and 9th Cir. R. 34–4.

Michael W. Schoenleber, Sacramento, California, for the petitioner.

Michelle Gluck, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for the respondent.

Before: ALDISERT,** D.W. NELSON, and TASHIMA, Circuit Judges.

D.W. NELSON, Circuit Judge:

Petitioner Dao Vang seeks review of a final order of deportation issued against him by the Board of Immigration Appeals ("BIA"). The BIA denied Vang's application for asylum and withholding of deportation under sections 208 and 243(h) of the Immigration and Nationality Act ("Act"), 8 U.S.C. §§ 1158, 1253(h). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a)(2), and we affirm.

### Factual and Procedural Background

Vang is a twenty-two year old ethnic Hmong. His parents are Laotian nationals. Because Vang's father fought in the CIA's "secret army" against the Laotian communists, Vang's parents were forced to flee Laos after the communist government of Pathet Lao seized control of the country.

Vang consequently was born in a United Nations refugee camp located in Thailand. When Vang was four-years old, two of his brothers were repatriated to the United States. Vang, however, was sent to France, along with his parents and four other siblings. Although Vang never became a French national, he attended school in France and learned to speak French. He also traveled abroad using French travel documents.

Vang lived in France until July 13, 1991, when at the age of sixteen he, accompanied by his mother, entered the United States on a tourist visa; his father joined them a few months later. While in the United States, Vang married a United States permanent resident; he now has a United States citizen daughter. His parents, along with one brother, are permanent residents of the United States. Vang also has a brother who is a United States citizen.

Vang's tourist visa allowed him to remain in the United States until January 12, 1992. Because Vang stayed beyond the period authorized by his visa, on March 6, 1993, he was issued an order to show cause, charging that he was subject to deportation. At a hearing before an immigration judge, Vang conceded deportability, but he declined to designate a country of deportation. Instead, he contended that he was eligible for asylum because he feared persecution if sent to Laos. The immigration judge found that because Vang had firmly resettled in France prior to entering the United States, he was ineligible for asylum under 8 C.F.R. § 208.14(d). The immigration judge also denied Vang's application for withholding of deportation, but he granted Vang the privilege of voluntary departure. The immigration judge ordered that if Vang failed to leave the United States by October 6, 1995, he would be deported to Thailand, France, or Laos, in that order of preference.

Vang appealed the immigration judge's decision to the BIA, but the BIA affirmed the decision and dismissed the appeal. The BIA extended Vang's deadline for voluntary de-

** The Honorable Ruggero Aldisert, United States Circuit Judge for the Third Circuit, sitting by designation.

parture until June 27, 1996. On August 14, 1996, Vang filed the instant petition for review.

### Standard of Review

██ We review de novo the BIA's determination of purely legal questions concerning the requirements of the Act. *Arrieta v. INS,* 117 F.3d 429, 430 (9th Cir.1997). The BIA's determination that an alien is not eligible for asylum must be upheld if supported by reasonable, substantial, and probative evidence in the record. *Astrero v. INS,* 104 F.3d 264, 265 (9th Cir.1996). The BIA's decision regarding whether to withhold deportation is reviewed for substantial evidence. *Mejia–Paiz v. INS,* 111 F.3d 720, 722 (9th Cir.1997). To reverse the BIA's decision not to withhold deportation, we must find that the evidence presented "was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *INS v. Elias–Zacarias,* 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

### Analysis

#### A. Asylum

The case at bar requires us to apply the Immigration and Naturalization Service's ("INS") "firm resettlement" regulations, 8 C.F.R. §§ 208.14(d)(2) and 208.15, to Vang's stand-alone application for asylum. Although Vang is now a twenty-two year old adult, all relevant events affecting whether or not he was firmly resettled in France occurred before 1991, when at the age of sixteen, he entered the United States with his parents. We therefore treat him as a minor.

The applicable INS regulations provide that an applicant who has "firmly resettled" in another country "shall be denied asylum." 8 C.F.R. § 208.14(d)(2). "Firmly resettled" is defined as follows:

> An alien is considered to be firmly resettled if, prior to arrival in the United States, he entered into another nation with, or while in that nation received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement unless he establishes:
>
> (a) That his entry into the nation was a necessary consequence of his flight from persecution, that he remained in that nation only as long as was necessary to

arrange onward travel, and that he did not establish significant ties in that nation; or

> (b) That the conditions of his residence in that nation were so substantially and consciously restricted by the authority of the country of refuge that he was not in fact resettled....

8 C.F.R. § 208.15.

██ It is clear from *Yang v. INS,* 79 F.3d 932, 933 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 83, 136 L.Ed.2d 40 (1996), that when a minor's application is part of a family unit's, the resolution of the parents' application will govern that of the minor members of the family. *Yang,* however, does not address the circumstances of this case, *i.e.,* where a minor applies for asylum independently rather than as part of a family. *See Yang,* 79 F.3d at 933 ("Petitioners are a Hmong family from Laos."). Moreover, the regulations themselves do not expressly state how they apply to a minor's stand-alone application.

Under INS regulations, the child of a refugee or asylee is generally entitled to the same status as his or her parent. *See* 8 C.F.R. §§ 207.1(e) (refugee status), 208.21(a) (asylee status). We have also followed the "unremarkable" common law concept "that a child's domicile follows that of his or her parents" in the section 212(c) context. *Lepe–Guitron v. INS,* 16 F.3d 1021, 1025 (9th Cir.1994) (citing Restatement (Second) Conflict of Laws § 14(2) (1969); 25 Am.Jur.2d Domicil 69 (1966)). The reason for this rule "is because children are, legally speaking, incapable of forming the necessary intent to remain indefinitely in a particular place." *Id.* (citing *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989)). In fact, "it would be unreasonable to hold an adolescent responsible for arranging or failing to arrange permanent resettlement." *Kahssai v. INS,* 16 F.3d 323, 327 (9th Cir.1994) (Reinhardt, J., concurring).

██ ·We follow the same principle in determining whether a minor has firmly resettled in another country, *i.e.,* we look to whether the minor's parents have firmly resettled in a foreign country before coming to the United States, and then derivatively attribute the

parents' status to the minor. This approach is consistent with the few BIA cases that have addressed the issue. *See, e.g., Matter of Hung,* 12 I & N Dec. 178, 1967 WL 13989 (B.I.A.1967) (unemancipated minor residing in household of her parents, whose refugee status has been recognized, held not to have been firmly resettled in Hong Kong after fleeing China); *Matter of Ng,* 12 I & N Dec. 411, 1967 WL 14047 (B.I.A.1967) (applicant who lived in Hong Kong for 11 years before coming to the United States at age twenty-two held to have firmly resettled in Hong Kong; applicant's father had resettled, and parents' residence imputed to minor).

The BIA applied the firm resettlement factors directly to Vang rather than to his parents. Nonetheless, the record fully supports the conclusion that Vang's parents were firmly resettled in France prior to entering the United States in 1991, and that none of the regulatory exceptions applies. Thus, upon attributing to Vang his parents' status as refugees firmly resettled in France prior to entering the United States, we conclude that Vang is ineligible for asylum. *See* 8 C.F.R. § 208.14(d)(2) (applicant for asylum who has firmly resettled in another country *"shall* be denied" asylum) (emphasis added).

Vang argues that because his French travel document expired after he entered the United States, France may forbid his return. Vang claims that the BIA therefore erred in finding him to be firmly resettled in France. Vang's position is not persuasive, however, because the fact that Vang allowed his French travel document to expire after he entered the United States cannot alter the disposition of his asylum claim. *See Yang,* 79 F.3d at 934 (finding firm resettlement despite petitioners' claim that they would no longer be able to return to country of firm resettlement due to expiration of travel documents); *see also Abdalla v. INS,* 43 F.3d 1397, 1400 (10th Cir.1994) (determining that expiration of petitioner's UAE residence permit after entry into United States did not affect finding that petitioner had firmly resettled in UAE). We consequently affirm the BIA's asylum determination.

*B. Withholding of Deportation*

An alien may not be deported if he can show that, upon deportation, he is more likely than not to face persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *INS v. Stevic,* 467 U.S. 407, 424, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984); 8 C.F.R. § 208.16(b). In the order of deportation, the immigration judge stated that Vang should be deported to Thailand, France, or Laos. Vang has not suggested that he would be subject to persecution in either France or Thailand. He is concerned, however, that neither France nor Thailand will accept him, and that he eventually could be forced to enter Laos, where he fears persecution. As the BIA noted, however, Vang has not shown that France would refuse to accept him. Nor has Vang demonstrated that Thailand would forcibly repatriate him to Laos if he were deported to Thailand.

Regardless, Vang's argument that he is more likely than not to face persecution should he be deported to Laos is not convincing. None of Vang's family has been in Laos in nearly twenty years. Vang has provided no evidence suggesting that he would be recognized as an enemy by the Laotian government. Moreover, the State Department has reported the successful repatriation of thousands of ethnic Hmong to Laos. In fact, the only Lao citizens who have faced problems upon repatriation have been individuals who held high positions in the pre–1975 government, who have close ties to General Vang Phao, or who are involved in the current insurgency. Because Vang fits into none of the above categories, the decision not to withhold deportation is supported by substantial evidence.

Finally, without citing any authority, Vang has requested that the panel remand his case to the immigration judge in order to clarify the deportation order previously issued. Because we find the deportation order to be sufficiently clear, and because Vang has not cited any authority permitting remand in the present case, we decline to remand for clarification.

**PETITION DENIED.**