**Meng Ly CHEO; Meng Heng Cheo, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 96–71041.

United States Court of Appeals, Ninth Circuit.

Argued May 7, 1998,
submission deferred.

Submitted May 22, 1998.

Decided Dec. 16, 1998.

Marco Antonio Rodriguez, Bonita, CA, for petitioners.

Susie Cho (argued), Mark C. Walters (briefed), Office of Immigration Litigation, Washington, DC, for respondent.

Before: CANBY, NOONAN and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

This asylum case turns on who must prove firm resettlement or the lack of it in a third country, if the asylum seeker has been there for a substantial period of time.

### Facts.

Meng Ly Cheo and Meng Heng Cheo are of Cambodian nationality. They applied for asylum on the ground that armed groups had tried to recruit them. One temporarily bought his way out with his watch and the money in his pockets. The armed groups commonly used threats of recruitment to extort money. The other brother was beaten up for not joining. Both had to get themselves smuggled out of the country to avoid recruitment, beatings and extortion. They feared that if they went back to Cambodia, they would be shot or tortured by one side if they refused to join, the other if they acceded.

At their hearing, at which they were found to be credible, an additional problem with remaining in Cambodia was developed, their Chinese ethnicity. The Cambodian constitution protects only persons of Khmer ethnicity, though this provision may be directed more at ethnic Vietnamese than ethnic Chinese. The Cheos testified that ethnic Chinese Cambodians are so designated on their documents, separated from Khmer children in school, and not allowed to have government jobs or to employ others.

The Cheos' parents still live in Cambodia. They operate a coffee shop in Phnom Penh. A sister lives there as well. But that is not to say there is no hazard. Three uncles have been killed, though it is hard to say by whom or why. In at least one case, "they tried to take the money from them and they know they are Chinese so they, they try to kill them to get the money."

When they got themselves smuggled out of Cambodia, in 1990, the Cheo brothers went to Vietnam for three months. Then after a brief return home, they lived for a year in Thailand. In 1991, they left Thailand for Malaysia, where they lived for three years. In 1994, they arranged to have themselves smuggled into the United States across the Mexican border.

In their INS proceedings, the Cheos conceded deportability. The immigration judge concluded that although they had proved discrimination against ethnic Chinese in Cambodia, it did not rise to the level of persecution for purposes of asylum. The military recruitment was not shown to be motivated by an animus against any group, and if by the government, as it may have been, would not constitute persecution. The IJ also noted that the Cheos had lived in Malaysia for three years without any molestation or persecution, and it was up to the Cheo brothers to prove that they had not firmly resettled there. They had offered no evidence to that effect. Because the Cheos "were not fleeing danger when they came to this country as they had been living in apparent peace in Malaysia for three years," had been in the United States for only a short time, and had paid smugglers to get themselves into the United States, the IJ denied voluntary departure.

The BIA adopted the IJ's decision, except for a disagreement with the IJ's view that the Cambodian army had probably been the force trying to recruit them. The BIA agreed with the Cheos that there was no official Cambodian army at the time, but held that it made no difference. The BIA rejected the Cheos' argument, raised for the first time on appeal, that the recruiters had imputed a political opinion to these apolitical young men. The Cheos petition for review.

### Analysis.

### A. Well founded fear.

The Cheos argue that they demonstrated a well founded fear of persecution by armed forces that had tried to recruit them, and

imputed a contrary political opinion to them, if they were to return to Cambodia. We need not reach this argument for asylum because of our conclusion on firm resettlement.

### B. Firm resettlement.

Immigration and Naturalization Service regulations [1] provide that an application for asylum must be denied if the applicant firmly resettled in another country prior to arrival in the United States:

> (d) *Mandatory denials.* An application for asylum shall be denied if:
>
> .    .    .    .    .
>
> (2) The applicant has been firmly resettled within the meaning of [8 C.F.R.] § 208.15.

8 C.F.R. § 208.14(d)(2) (1994). The definition of firm resettlement requires some sort of availability of the opportunity to stay in the third country:

> § 208.15. Definition of "firm resettlement."
>
> An alien is considered to be firmly resettled if, prior to arrival in the United States, he entered into another nation with, or while in that nation received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement unless he establishes:
>
> (a) That his entry into that nation was a necessary consequence of his flight from persecution, that he remained in that nation only as long as was necessary to arrange onward travel, and that he did not establish significant ties in that nation; or
>
> (b) That the conditions of his residence in that nation were so substantially and consciously restricted by the authority of the country of refuge that he was not in fact resettled. . . .

8 C.F.R. § 208.15.

We held in *Yang v. INS,* 79 F.3d 932 (9th Cir.1996), where the applicants seeking asylum from Laos had spent fourteen peaceful years in France subsequent to fleeing Laos, that the regulation was proper and mandatory. We noted that the statutory statement of purpose spoke to "the urgent needs of persons subject to persecution in their homelands," *id.* at 939, citing Refugee Act of 1980, § 101, and persons firmly resettled elsewhere "are by definition no longer subject to persecution." *Id.* In *Vang v. INS,* 146 F.3d 1114 (9th Cir.1998), a Laotian who had spent twelve years in France argued that his French travel document had expired after he entered the United States, so he might not be allowed to return to France and should therefore not be considered to be firmly resettled there. But we held that his allowing his travel document to expire could not alter a finding of firm resettlement.

▮ In this case, there is no direct evidence one way or the other as to whether the Cheos have or had the right to return to Malaysia. The IJ presumed a right to return from their three year undisturbed stay. We conclude that this rebuttable presumption was permissible. The regulations provide that if a ground for denial of asylum, such as firm resettlement, "may apply," the applicant has the burden of proving by a preponderance of evidence that the ground does not apply. 8 C.F.R. § 208.14(c). Three years of peaceful residence established that the ground of "firm resettlement" in Malaysia might apply, so the Cheos had the burden of proving that they were not firmly resettled. That was enough time so that, in the absence of evidence to the contrary, it would be a reasonable inference from the duration that Malaysia allowed the Cheos to stay indefinitely. A duration of residence in a third country sufficient to support an inference of permanent resettlement in the absence of evidence to the contrary shifts the burden of proving absence of firm resettlement to the applicant. This holding is compelled by the language of 8 C.F.R. § 208.14(c), and is consistent with the views of the two other circuits to consider the question. *See Abdalla v. INS,* 43 F.3d 1397, 1399 (10th Cir.1994); *Chinese Am. Civic Council v. Attorney General,* 566 F.2d 321, 328 n. 18 (D.C.Cir.1977).

---

1. Subsequent to this application and the hearing before the IJ, Congress put an exception for firm resettlement in another country prior to arriving into the United States into the statute. *See* 8 U.S.C. § 1158(b)(2)(A)(vi) (1996). The parties have argued the case, however, and we decide it, based on the law in effect when it was litigated before the IJ.

This does not mean that as soon as a person has come to rest at a country other than the country of danger, he cannot get asylum in the United States. Another country may have allowed only a temporary and not a permanent refuge. But where the duration and circumstances indicate that the asylum seeker may remain in the third country, then it is incumbent upon him to show the contrary. A persecuting regime does not entitle its victims to choose one country of asylum over another which first afforded permanent refuge.

### C. Translation.

■ The Cheos argue that they were denied due process because the interpreter at their deportation hearing was incompetent. We have carefully examined the record, and agree with the BIA's conclusion, that the record revealed no instances where translator error deprived the Cheos of due process, their attorney at the hearing raised no objection, and the Cheos raised no claim of additional evidence that was not heard because of translator error. The interpreter spoke too softly for the microphone to pick up on several occasions, and had some difficulty with certain questions and answers, but the IJ intervened on each such occasion to ensure that the words were translated, heard and understood. Absence of objection deprived the IJ of any opportunity to do more, if it was necessary. As in *Kotasz v. INS,* 31 F.3d 847, 850 n. 2 (9th Cir.1994), we cannot conclude that translator error influenced the outcome.

### D. Voluntary Departure.

■ The Cheos argue that they should have been granted voluntary departure, because hiring a smuggler to get them into the United States is not as bad as some of the other cases where denial has been upheld. It is not clear in our circuit whether we review for abuse of discretion or only for an arbitrary and capricious determination. *Compare Estrada–Posadas v. INS,* 924 F.2d 916, 920 (9th Cir.1991), with *Rashtabadi v. INS,* 23 F.3d 1562, 1566 (9th Cir.1994). We need not attempt to resolve the standard of review, because the outcome is the same either way. The IJ based exercise of his discretion on an articulated reasonable analysis of appropriate factors. *Cf. Estrada–Posadas,* 924 F.2d at 920.

### E. Withholding of deportation.

■ The Cheos argue that they are entitled to withholding of deportation to Cambodia, because of a clear probability of persecution, based on the likelihood of military recruitment and the discrimination against ethnic Chinese. The IJ had ordered them deported to Thailand, or to Cambodia if Thailand would not accept them. We allowed time after argument and before submission for the Immigration and Naturalization Service to consider the Cheos' request that, if deported, and if Thailand would not accept them, they be deported to Malaysia if it would accept them in preference to Cambodia. The Immigration and Naturalization Service has agreed to their request. As in *Vang,* 146 F.3d at 1117, they have not shown that Malaysia and Thailand would both refuse to accept them, and have not shown a clear probability of persecution if that occurs.

PETITION DENIED.