Asatur GASISYAN, a.k.a. Khachatur Mkrtchyan, Petitioner,

v.

Michael B. MUKASEY, Attorney General, Respondent.

No. 06–75267.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 2008.

Filed Sept. 10, 2008.

Anna A. Davitian, Esq., Law Offices of Anna A. Davitian, Burbank, CA, for Petitioner.

CAC–District Counsel, Esquire, Office of the District Counsel, Department of Homeland Security, Los Angeles, CA, Charles Canter, Trial, OIL, Russell J.E. Verby, Esquire, David V. Bernal, Esquire, DOJ–U.S. Department of Justice, Civil Division/Office of Immigration Litigation, Washington, DC, Ronald E. LeFevre, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, for Respondent.

Before: REINHARDT, MINER,* and BERZON, Circuit Judges.

**MEMORANDUM** **

Asatur Gasisyan petitions for review of the October 30, 2006 order of the Board of Immigration Appeals ("BIA" or "Board") dismissing his appeal. We grant his petition as to asylum from Russia but deny his petition as to asylum from Armenia.[1]

### 1. Religious Persecution—Armenia

■ The BIA concluded that even if Gasisyan testified credibly regarding his experiences in Armenia, the harm he claimed to have suffered there did not rise to the level of persecution. Because Gasisyan's testimony concerned events that allegedly occurred when he was still a minor, the BIA was required to take into account both the harm Gasisyan claims to have suffered personally and the injury he reported was inflicted on his parents. *See Hernandez–Ortiz v. Gonzales,* 496 F.3d 1042, 1045–1046 (9th Cir.2007). Even so, Gasisyan's testimony did not sustain his burden, because he did not "refer[ ] to specific facts sufficient to demonstrate that [he] is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii); *see Ladha v. INS,* 215 F.3d 889, 901 (9th Cir.2000) (stating that applicant's testimony can establish the factual basis for an asylum claim if it is "credible, direct and *specific*" (emphasis added)).

Gasisyan claims he was beaten by his schoolmates and his parents were beaten and physically detained by police. But aside from one such assault by police on his parents in 1996, Gasisyan did not identify any specific instance in which such an

* The Honorable Roger J. Miner, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. In his application, Gasisyan asserted claims for withholding of removal and protection under the Convention Against Torture. Because Gasisyan did not present any arguments concerning those claims either in his appeal to the BIA or in his brief here, they have not been exhausted, and are, in any case, waived. *See Camposeco–Montejo v. Ashcroft,* 384 F.3d 814, 821 (9th Cir.2004); *Chebchoub v. INS,* 257 F.3d 1038, 1045 (9th Cir. 2001).

attack occurred. As to the 1996 incident, he did not testify with any specificity regarding the severity of the attack or the length of the detention. Even if one also considers in the past persecution determination the discrimination against him in school and against his parents in employment on account of religion, *see Korablina v. INS,* 158 F.3d 1038, 1044 (9th Cir.1998), Gasisyan's evidence concerning his treatment in Armenia does not compel the conclusion that he has suffered past persecution. *See, e.g., Nagoulko v. INS,* 333 F.3d 1012, 1016 (9th Cir.2003); *Hoxha v. Ashcroft,* 319 F.3d 1179, 1182 (9th Cir.2003).

■ The BIA also did not err in determining that, having failed to establish past persecution, Gasisyan has not established that he has an objectively reasonable fear of persecution if returned to Armenia. There is no evidence in the record that Pentecostals in Armenia currently face persecution on account of their religion. *See, e.g., Movsisian v. Ashcroft,* 395 F.3d 1095, 1097 (9th Cir.2005). Accordingly, we deny Gasisyan's petition as to his claim for asylum from Armenia.

## 2. Ethnic Persecution—Russia

### a. Past Persecution

■ (i) The BIA determined that Gasisyan had not established past persecution in Russia on account of his Armenian ethnicity even if his testimony regarding his experiences in Russia is credited. This conclusion is not supported by substantial evidence.

Gasisyan described with specificity two incidents in which he was physically attacked by gangs of skinheads who had identified him as an Armenian, the first of which allegedly resulted in a serious injury to his knee, and the second of which he ran from only after having been hit twice in the face. Multiple incidents involving physical harm generally rise to the level of persecution, *Ahmed v. Keisler,* 504 F.3d 1183, 1194 (9th Cir.2007). The fact that in the second attack the harm was attempted, rather than fully completed, does not undermine Gasisyan's claim, *see, e.g., Singh v. INS,* 94 F.3d 1353, 1358 (9th Cir.1996).

(ii) Contrary to the government's contention, Gasisyan's claim is not negated because the attacks allegedly were committed by skinhead gangs "that the government is . . . unable to control," rather than by government authorities themselves. *See Korablina,* 158 F.3d at 1044. The record clearly establishes the inability of Russian authorities to protect Armenians from ethnically-motivated violence at the hands of ultra-nationalist skinheads. *See* U.S. DEPARTMENT OF STATE, BUREAU OF DEMOCRACY, HUMAN RIGHTS, AND LABOR, COUNTRY REPORTS ON HUMAN RIGHTS PRACTICES FOR 2005, RUSSIA 32 (Mar. 8, 2006) (hereinafter "2005 Country Report"), *available at http://www.state.gov/g/drl/rls/hrrpt/2005/61671.htm* (stating that Russian "police investigations of [skinhead attacks] frequently were ineffective" and "[m]any victims . . . experienced indifference on the part of police [.]").[2]

Nor does Gasisyan's failure to report the incidents weaken his claim. The record convincingly establishes that "report[ing] that persecution to the authorities . . . would have been futile or have subjected him to further abuse." *Ornelas–Chavez v. Gonzales,* 458 F.3d 1052, 1058 (9th Cir. 2006); 2005 Country Report at 31 (stating that "[p]olice reportedly beat, harassed,

---

**2.** Although the immigration judge did refer to some parts of the 2005 Country Report suggesting that the government was to some degree "[ ]willing" to curb the skinheads, neither the immigration judge nor the BIA discussed those parts of the report pertinent to whether the government was "[ ]able" to do so. *See Korablina,* 158 F.3d at 1044.

and demanded bribes from persons ... who appeared to be from the Caucasus."), *see also id.* at 32.

In short, a reasonable factfinder, crediting Gasisyan's testimony and taking into account the pertinent portions of the 2005 Country Report, would be compelled to conclude that Gasisyan suffered past persecution in Russia on account of his ethnicity. The BIA's decision to the contrary, therefore, was not supported by substantial evidence.

■ (iii) The immigration judge determined that Gasisyan was not credible, and the BIA did not decide whether or not this determination was clearly erroneous. *See* 8 C.F.R. § 1003.1(d)(3). We therefore remand so that the Board may do so now. *See Canjura–Flores v. INS,* 784 F.2d 885, 889 (9th Cir.1985); *INS v. Ventura,* 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002).[3] If the BIA does conclude that the IJ's credibility determination was clearly erroneous, Gasisyan is entitled to the presumption of a well-founded fear of persecution.

### b. *Fear of Future Persecution*

■ The BIA also erred in its determination that Gasisyan failed to demonstrate an objectively reasonable fear of future persecution by skinheads if he is returned to Russia.

(i) In *Avetova–Elisseva v. INS,* 213 F.3d 1192 (9th Cir.2000), we held that a pattern-and-practice of governmental persecution of Armenians in Russia existed at that time. *See id.* at 1201. The 2005 Country Report details a level of violence against Armenians that indicates widespread persecution still exists, even though the perpetrators now are not state authorities but skinhead gangs these authorities are unable to control. *Compare Avetova–Elisseva,* 213 F.3d at 1198–1199 (citing State Department's Russia Country Report on Human Rights Practices for 1996 as stating that law enforcement agents in Moscow "routinely detained, intimidated and extorted money from and beat people ... from the Caucasus"); *with* 2005 Country Report at 31–32 (stating that "members of ethnic ... minorities were victims of beatings, extortion and harassment by skinheads"; that in Moscow over an eleven-month period, "skinheads attacked 125 people, and 8 of the victims died[;]" that "[s]kinheads primarily targeted foreigners and individuals from the Northern Caucasus, although they also expressed ... hostility toward adherents of foreign religions[;]" and citing an estimate that "there were approximately 50 thousand skinheads in 85 cities" in Russia).

Thus, a reasonable factfinder would be compelled to conclude from the record that Armenians are a "disfavored group" in Russia. *See Avetova–Elisseva,* 213 F.3d at 1198–99; *also* 2005 Country Report at 32–33. Assuming Gasisyan's testimony is credible, the two attacks he experienced demonstrate that he faces an "individualized risk of persecution," *Lolong v. Gonzales,* 484 F.3d 1173, 1178 (9th Cir.2007) (en banc) by the skinheads. A reasonable

---

**3.** The immigration judge made no adverse credibility determination as to Gasisyan's grandfather, and the BIA therefore credited the latter's testimony. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). Gasisyan cannot establish past persecution, however, based on that testimony alone. His grandfather testified only to the first attack by the skinheads. Moreover, the grandfather was not in Russia at the time these attacks occurred. So his testimony, while corroborative of Gasisyan's claims, is not, by itself, an adequate ground for finding past persecution. *Ladha v. INS,* 215 F.3d 889, 901 (9th Cir.2000) (stating that testimony can establish the basis for an asylum claim if it is "credible, *direct* and specific").

factfinder therefore would be compelled to conclude that it is objectively reasonable for Gasisyan to fear persecution if he is returned to Russia.

■ (ii) The BIA also erred to the extent that it treated Gasisyan's father and siblings' continued presence in Russia as undermining the objective reasonableness of Gasisyan's fear of future persecution. Gasisyan testified that his last contact with his relatives in Russia was before he left the country in 2005. There is no evidence in the record concerning whether or not these relatives have experienced any incidents of ethnic persecution since then.

(iii) To demonstrate a well-founded fear Gasisyan also had to show that his fear of future persecution in Russia is not only "objectively reasonable," but also "subjectively genuine." *See, e.g., Lolong*, 484 F.3d at 1178. Gasisyan was required to establish the latter point through credible testimony. *See id.* As the BIA denied Gasisyan's appeal on the merits without evaluating the IJ's credibility determination, we remand for the Board to do so now.[4] *See Canjura–Flores*, 784 F.2d at 889; *Ventura*, 537 U.S. at 16, 123 S.Ct. 353.

### 3. Military Conscription—Armenia and Russia

■ Finally, Gasisyan claims to have experienced past persecution on account of his religion and ethnicity because he was called for military service and denied alternative national service as a conscientious objector in both Armenia and Russia. He also testified that he fears persecution in the future on the grounds that, having avoided conscription by fleeing these countries, he will be jailed or called up again if he returns. Neither Gasisyan's claim of persecution in the past, nor his stated fear of persecution in the future on this basis, supports his asylum claim. He does not contend that he either was—or will be—conscripted or denied alternative service on account of his religion or ethnicity. *See Movsisian*, 395 F.3d at 1097.

### 4. Conclusion

We deny Gasisyan's petition as to his claim for asylum from Armenia, and grant his petition as to his claim for asylum from Russia. We remand to the BIA for consideration of whether the IJ's adverse credibility determination as to Gasisyan is clearly erroneous, and for such other determinations as may be appropriate.

DENIED IN PART; GRANTED IN PART; REMANDED IN PART.

---

4. Gasisyan's grandfather's testimony, although credited by the BIA, cannot support the claim that Gasisyan's fear of future persecution is subjectively genuine. *See, e.g., Lolong*, 484 F.3d at 1178.