**Ivan HARUTUNOV, Petitioner,**

v.

**Michael B. MUKASEY, Attorney General, Respondent.**

**No. 05–70069.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 22, 2008.

Filed Nov. 10, 2008.

Alan Aghabegian, Aghabegian & Associates, Glendale, CA, for Petitioner.

CAC–District Counsel, Esquire, Office of the District Counsel Department of Homeland Security, Los Angeles, CA, Zoe Jaye Heller, Esquire, Trial, Ethan B. Kanter, Esquire, Michael P. Lindemann, Esquire, U.S. Department of Justice, Washington, DC, Ronald E. Lefevre, Office of the District Counsel Department of Homeland Security, San Francisco, CA, for Respondent.

Before: W. FLETCHER and PAEZ, Circuit Judges, and DUFFY,* District Judge.

MEMORANDUM **

Ivan Harutunov, an ethnic Armenian from Azerbaijan, appeals the Board of Immigration Appeals' ("BIA") affirmance of the immigration judge's ("IJ") order denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Harutunov sought asylum in the United States after he and his family were persecuted as members of an ethnic and religious minority in Azerbaijan.

We have jurisdiction to review Harutunov's claims under 8 U.S.C. § 1252(a). Because the BIA issued a streamlined decision, the court reviews the IJ's decision, which is treated as the final agency determination. 8 C.F.R. § 1003.1(e)(4)(ii); *see also Falcon Carriche v. Ashcroft,* 350 F.3d 845, 855 (9th Cir.2003).

The denial of asylum is reviewed for substantial evidence. *Camposeco–Montejo v. Ashcroft,* 384 F.3d 814, 818 (9th Cir. 2004). A finding of "firm resettlement" is considered a factual determination that is also reviewed under the substantial evidence standard. *Maharaj v. Gonzales,* 450 F.3d 961, 967 (9th Cir.2006) (en banc).

1. *Firm Resettlement*

Substantial evidence does not support the IJ's decision that Harutunov had firmly resettled in Armenia. "An alien is considered to be firmly resettled if, prior to arrival in the United States, he or she entered into another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement...." 8 C.F.R. § 1208.15. The focus of a firm resettlement inquiry is on the *offer. See Maharaj,* 450 F.3d at 972. The Government did not produce any evidence that Harutunov received an offer of status in Armenia. Prior to Harutunov's flight from Azerbaijan, he had visited Armenia only briefly for family reasons. By the time he went to Yerevan in 1993 to look for work, his only family in Armenia had passed away. He spent several months in Yerevan, trying unsuccessfully to obtain a work or residence permit. During that time, Harutunov was harassed and subjected to ethnic slurs. He never tried to bring his family to Armenia to settle, as he felt that they would not be safe.

---

* The Honorable Kevin Thomas Duffy, Senior United States District Judge for the Southern District of New York, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

In *Andriasian v. INS*, we upheld the BIA's determination that an Azerbaijan citizen of Armenian descent was not firmly resettled in Armenia, despite his nearly 2 years of residency there, because he faced harassment and discrimination during his stay, and because the Armenian government never offered him permanent refuge. 180 F.3d 1033, 1039 (9th Cir.1999).

Harutunov's circumstances are similar to that of the petitioner in *Andriasian*, although Harutunov's stay in Armenia was significantly shorter and without his family (two factors that make Harutunov's settlement even less "firm" than Andriasian's). Like Andriasian, Harutunov was subjected to harassment based his Baku origins. This harassment came not only from ordinary locals, but also from the Armenian police. In light of *Andriasian*, the record evidence compels a finding that Harutunov received no offer of permanent refuge in Armenia, and was therefore not barred from asylum on the basis of firm resettlement.

### 2. *Asylum and Withholding of Removal*

■ The IJ stated that, even without the firm resettlement bar, Harutunov was ineligible for asylum and withholding of removal based on two major factors. First, the IJ found that the harm Harutunov had suffered was the result of civil war and internal conflict. Second, the IJ found that the harm amounted to discrimination, but not persecution. Because the IJ did not make an adverse credibility finding, we assume that Harutunov's factual contentions are true. *Vukmirovic v. Ashcroft*, 362 F.3d 1247, 1251 (9th Cir.2004). Substantial evidence in the record, including Harutunov's testimony and the State Department Country Reports on Human Rights Practices ("Country Reports"),

does not support the IJ's denial of asylum and withholding of removal.[1]

There is no support in the case law for the IJ's implication that persecution cannot occur in the context of civil war or internal conflict. In *Ndom v. Ashcroft* we held that "the existence of civil war or civil strife in an applicant's country of origin, by itself, does not establish eligibility for asylum. At the same time, the existence of civil strife does not alter our normal approach to determining refugee status or make a particular asylum claim less compelling." 384 F.3d 743, 752 (9th Cir.2004); *see also Knezevic v. Ashcroft*, 367 F.3d 1206, 1211–12 (9th Cir.2004) (distinguishing between displaced persons fleeing the ravages of war and refugees fleeing ethnic cleansing).

Harutunov testified that after violence broke out between the Soviet Republics of Armenia and Azerbaijan in 1988, he was fired from his job for being ethnic Armenian. Soon after, a group of Azeri men broke into his house during the night, destroyed most of his property, and severely beat him and his family. The men returned several days later and threw Harutunov's family out of their house. They again severely beat Harutunov. The Government does not contest that this happened because of Harutunov's Armenian ethnicity. The Country Reports in the record corroborate Harutunov's claims about the violence towards ethnic Armenians in Azerbaijan.

The record evidence compels a finding that Harutunov suffered multiple forms of mistreatment, the cumulative effect of which clearly establishes persecution. *See Korablina v. INS*, 158 F.3d 1038, 1044 (9th Cir.1998); *Guo v. Ashcroft*, 361 F.3d 1194, 1203 (9th Cir.2004). Having established that he suffered past persecution, Harutu-

---

**1.** Harutunov does not appeal the IJ's denial of     his claim for relief under CAT.

nov is entitled to a presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). To rebut that presumption, the Government must demonstrate that there has been a fundamental change in circumstances such that Harutunov no longer has a well-founded fear. *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir.2004). The Government has presented no evidence to rebut the presumption. Harutunov bolsters his claim of a well-founded fear of future persecution with evidence that ethnic Armenians are a disfavored group in Azerbaijan. *See Hoxha v. Ashcroft*, 319 F.3d 1179, 1182–83 (9th Cir.2003). Having established past persecution and a well-founded fear of persecution on account of a protected ground, Harutunov is statutorily eligible for asylum. 8 U.S.C. § 1101(a)(42)(A).

Because Harutunov has established that he suffered past persecution on account of a protected ground, a presumption arises that he is also entitled to withholding of removal. *Baballah v. Ashcroft*, 367 F.3d 1067, 1079 (9th Cir.2004). The Government has not rebutted this presumption. This court recognized in *Andriasian* that the petitioner's "life was threatened because of his Armenian ancestry," warranting a grant of withholding. 180 F.3d at 1043. The most recent Country Report in the record stated that "the approximately 10,000–30,000 citizens of Armenian descent complained of discrimination in employment, schooling, housing, and other areas. Most shield their identity or try to leave Azerbaijan." The Report also stated that all Armenian churches remain closed, so ethnic Armenians are unable to attend their traditional places of worship. The earlier Country Report in the record noted that problems facing the ethnic Armenian minority had decreased, but only because most Armenians had been forced to leave. Without contrary evidence from the Government, any reasonable trier of fact would be compelled to find that it is more likely than not that Harutunov would be subject to persecution upon returning to Azerbaijan. *See Baballah*, 367 F.3d at 1079.

We therefore GRANT the petition for review and REMAND for the Attorney General's exercise of discretion regarding asylum, and for an appropriate order withholding removal.