Joel Valdez **ESPEJO,** Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. 01–71568.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 7, 2002.\*

Filed Nov. 22, 2002.

---

\* This panel unanimously finds this case suitable for decision without oral argument. See     Fed. R.App. P. 34(a)(2).

Steve J. Rodriguez, Korenberg, Abramowitz & Feldun, Sherman Oaks, CA, for the petitioner.

Robert D. McCallum, Civil Division of the Department of Justice; David V. Bernal, Office of Immigration Litigation, Department of Justice; and M. Jocelyn Lopez Wright, Office of Immigration Litigation, Civil Division of the Department of Justice, Washington, DC, for the respondent.

Before CANBY, JR., GOULD, and BERZON, Circuit Judges.

## OPINION

GOULD, Circuit Judge.

Petitioner Joel Valdez Espejo is a native and citizen of the Philippines who was admitted into the United States on July 26, 1992, as a non-immigrant exchange visitor under Immigration and Nationality Act (INA) § 101(a)(15)(J), 8 U.S.C. § 1101(a)(15)(J), with authorization to remain until September 15, 1992. Because Espejo entered the United States under an exchange visa, he is subject to the foreign residence requirement of INA § 212(e), 8 U.S.C. § 1182(e). The foreign residence requirement mandates that persons admitted under an exchange visa return to their country of citizenship for two years after completing the exchange program before they become eligible for any adjustment of status. 8 U.S.C. § 1182(e) (2002).

Nonetheless, in his petition for review Espejo argues that the foreign residence requirement does not apply to him because he procured his J–1 visa by fraud and that the Board of Immigration Appeals's (BIA) contrary decision conflicts with the plain intent of INA § 212(e). We have jurisdiction, reject Espejo's contention, and deny his petition. We conclude that the BIA's interpretation of INA § 212(e) is reasonable and correct.

## I

Espejo remained in the United States after his exchange visa expired. When the Immigration and Naturalization Service (INS) commenced deportation proceedings in 1996, Espejo conceded deportability but sought adjustment of status to lawful permanent resident because he had married a United States citizen in 1994. At that time, he was awaiting a response to his application for waiver of the foreign residence requirement under INA § 212(e). Because of his pending waiver application, Espejo's case was continued several times until a deportation hearing was held September 5, 1997.

At the September 5, 1997, deportation hearing, Espejo still had not received a response to his application for waiver of the foreign residence requirement. Espejo then changed his position and argued that the foreign residence requirement did not apply to him because he fraudulently obtained his exchange visa by failing to inform the interviewing official at the U.S. Embassy that the agricultural exchange program in which he was supposed to participate had not received the necessary funding.

The Immigration Judge denied Espejo's adjustment of status despite his claim that the foreign residence requirement did not apply to him. On appeal, the BIA concluded that Espejo remained subject to the § 212(e) foreign residence requirement, relying on its precedent decision in *In Re Park*, 15 I. & N. Dec. 436 (1975).

## II

■ Espejo's petition for review challenges the BIA's conclusion that he is subject to § 212(e) even though he now claims he fraudulently obtained his exchange visa. As noted, the BIA relied on its interpretation of § 212(e) in *In Re Park*. Presented with similar facts, the BIA in *Park* concluded that the language of § 212(e) applies to a person who fraudulently gains admission to the U.S. as an exchange visitor under INA § 101(a)(15)(J).

■ The BIA's interpretation of the INA § 212(e) in a formal adjudication is afforded deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *INS v. Aguirre–Aguirre*, 526 U.S. 415, 424, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (the principles of *Chevron* clearly apply to the INA statutory scheme, and judicial deference is particularly appropriate in the immigration context); *Pedro–Mateo v. INS*, 224 F.3d 1147, 1150 (9th Cir.2000) (the BIA's purely legal interpretations are generally entitled to deference under *Chevron*). The *Chevron*

inquiry is a two-step process: (1) whether "the statute is silent or ambiguous with respect to the specific issue;" and if so (2) whether the agency's interpretation is based on a permissible construction of the statute. 467 U.S. at 843, 104 S.Ct. 2778.

The foreign residence requirement applies to three categories of exchange visitors: first, those whose exchange program was government financed;[1] second, those whose specialized field of knowledge or skill is required by the alien's country of origin;[2] and third, those who are admitted for medical education or training. According to the information provided by Espejo in his application for waiver of the foreign residence requirement, Espejo falls within the second category of exchange visitors, § 212(e)(ii), because he came to the United States on a non-government funded agricultural education program. The foreign residence requirement, as set out in § 212(e)(ii), applies to exchange visitors whose field of study appears on the "Exchange Visitor Skills List." 22 C.F.R. § 41.63 (2002). Exchange visitors, like Espejo, who come from the Philippines for agricultural education are included on the skills list. Amendment to Exchange–Visitor Skills List, 49 Fed.Reg. 24194–01 (June 12, 1984).

Espejo argues that actual participation in the exchange program is required for the foreign residence requirement to apply. However, he concedes that § 212(e)(ii) is silent or ambiguous as to

1. Section 212(e)(i) applies the foreign residence requirement to exchange visitors "(i) whose participation in the program for which he came to the United States was financed in whole or in part, directly, or indirectly, by an agency of the Government of the United States or by the government of the country of his nationality or last residence." 8 U.S.C. § 1182(e)(i).

2. Section 212(e)(ii) applies the foreign residence requirement to exchange visitors "(ii) who at the time of admission or acquisition of status under section 1101(a)(15)(J) of this title was a national or resident of a country which the Director of the United States Information Agency, pursuant to regulations prescribed by him, had designated as clearly requiring the services of persons engaged in the field of specialized knowledge or skill in which the alien was engaged." 8 U.S.C. § 1182(e)(ii).

whether actual participation in the program is required. And, contrary to Espejo's contention, the legislative history does not support his position. The foreign residence requirement was enacted to ensure that exchange visitors would return to their country of origin and serve the needs of that country by using the skills learned in the United States. Pub.L. No. 84–555, S.Rep. No. 84–1608, 1956 U.S.C.C.A.N. 2662, 2663 (codified at 8 U.S.C. § 1182(e)). Espejo argues that participation in the program is necessary for this objective to be served. The residence requirement, however, was also intended to prevent visitors from using the exchange program to circumvent the operation of the immigration laws. *Id.* That objective implies that Congress would have intended the requirement to apply to exchange visitors regardless of whether they fraudulently obtained their exchange visas.

 Because the legislative history is at best ambiguous as to whether participation in study is a prerequisite to the residence requirement, and the statute is silent as to the application of § 212(e)(ii) to persons who have fraudulently obtained exchange visas, the next step of the *Chevron* inquiry is warranted. In step two of the *Chevron* inquiry, we consider the reasonableness of the BIA's interpretation of § 212(e)(ii). *United States v. Mead Corp.*, 533 U.S. 218, 229, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (the reviewing court must not reject an agency interpretation simply because the court would have interpreted the statute otherwise). Here, the BIA's evenhanded application of the requirement prevents the exchange program from becoming an immigration tool, which is consistent with the congressional purpose of the requirement. As the BIA concluded in *Park*, to construe the statute otherwise would create an opportunity for immigration for exchange visitors who have committed fraud, but not for those who have participated in the program in good faith. 15 I. & N. Dec. 436, 438 (1975). In addition, a contrary interpretation may tempt exchange visitors to allege fraud to avoid the foreign residence requirement, even where they have not committed fraud. The BIA's interpretation of § 212(e)(ii) is reasonable, and we conclude it is the correct meaning of Congress's language.

**PETITION DENIED.**