**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ENRIQUE CUEVAS-GASPAR,
                    *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,
                    *Respondent.*

No. 03-73562

Agency No.
A75-268-157

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
March 11, 2005—Seattle, Washington

Filed December 7, 2005

Before: Ferdinand F. Fernandez, A. Wallace Tashima, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Tashima;
Dissent by Judge Fernandez

15811

## COUNSEL

Soren M. Rottman, Northwest Immigrant Rights Project, Granger, Washington, for the petitioner.

Bryan S. Beier, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

## OPINION

TASHIMA, Circuit Judge:

Enrique Cuevas-Gaspar ("Cuevas-Gaspar"), an alien with legal permanent resident status, petitions for review of the Board of Immigration Appeal's ("BIA") conclusion that

Cuevas-Gaspar is removable. Cuevas-Gaspar was convicted for being an accomplice to residential burglary under Washington law. Cuevas-Gaspar asserts that the BIA erred in concluding that he was removable because his conviction constituted a crime of moral turpitude. Cuevas-Gaspar also asserts that his presence in the United States as an unemancipated minor residing with his lawfully-admitted mother should count towards the requirement, under Immigration and Nationality Act ("INA") § 240A(a)(2), 8 U.S.C. § 1229b(a)(2), that he have resided in the United States continuously for seven years "after having been admitted in any status."

We have jurisdiction over Cuevas-Gaspar's petition for review pursuant to INA § 242(b)(2), 8 U.S.C. § 1252(b)(2). *See Notash v. Gonzales*, 427 F.3d 693, 695-96 (9th Cir. 2005). We grant the petition and remand to the BIA for further proceedings.

## BACKGROUND

Petitioner Enrique Cuevas-Gaspar ("Cuevas-Gaspar") is a 21-year-old native and citizen of Mexico. He was admitted to the United States as a lawful permanent resident on December 4, 1997. Cuevas-Gaspar asserts that he entered the United States with his parents in 1985, when he was one year old, and that his mother attained permanent resident status in 1990, when Cuevas-Gaspar was seven years old.[1]

On October 16, 2002, Cuevas-Gaspar pled guilty in Washington Superior Court to the offense of being an accomplice to residential burglary, in violation of Washington Revised Code §§ 9A.52.025(1) and 9A.08.020(3). The Statement of Defendant on Plea of Guilty requires the defendant to state "in

---

[1]The immigration judge assumed that there was no issue of fact as to whether Cuevas-Gaspar resided in the United States prior to attainment of legal permanent resident status.

[his] own words, what [he] did that makes [him] guilty of this crime." In the guilty plea statement, Cuevas-Gaspar responded: "On March 13, 2002, in Yakima County, I helped another person take property without permission from a residence where no one was home." He was sentenced to a three-month term of confinement.

On February 28, 2003, the Immigration and Naturalization Service[2] issued Cuevas-Gaspar a Notice to Appear, charging him as removable under 8 U.S.C. § 1227(a)(2)(A)(i) for having been "convicted of a crime involving moral turpitude committed within five years . . . after the date of admission . . . for which a sentence of one year or longer may be imposed." Cuevas-Gaspar denied the charge that he was removable and denied that his conviction constituted a crime involving moral turpitude. He conceded that he was a native and citizen of Mexico, that he was admitted as a lawful permanent resident in December 1997, and that he was convicted of being an accomplice to residential burglary under Washington law. He also said that he did not have lawful status prior to December 1997. Cuevas-Gaspar then asserted that he was eligible for cancellation of removal.

Noting that Cuevas-Gaspar's arguments presented only issues of law, the IJ concluded that Cuevas-Gaspar's conviction constituted a crime involving moral turpitude and that Cuevas Gaspar therefore was removable. The IJ also reasoned that, because Cuevas-Gaspar did not have lawful status until December 1997, Cuevas-Gaspar could not establish seven years of continuous residence "after having been admitted in any status." The IJ concluded that Cuevas-Gaspar therefore was not eligible for cancellation of removal under INA § 240A(a), 8 U.S.C. § 1229b(a). The IJ ordered that Cuevas-Gaspar be removed to Mexico.

---

[2]The Immigration and Naturalization Service has since been abolished and its functions transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2142 (2002).

Cuevas-Gaspar appealed to the BIA, arguing (1) that his conviction was for an offense that is not a crime involving moral turpitude, and (2) that he satisfies the seven-year continuous residence requirement for cancellation of removal because his presence in the United States as a minor residing with his lawfully-admitted parents should count towards that requirement.

The BIA rejected both arguments. First, the BIA concluded that Cuevas-Gaspar's conviction constituted a crime of moral turpitude. The BIA stated: "It is well-settled that generic burglaries of this sort constitute crimes involving moral turpitude. . . . The respondent's conviction as an accomplice to the underlying crime also constitutes a crime involving moral turpitude. Accordingly, we affirm the Immigration Judge's ruling that the respondent is removable as charged." The BIA then reasoned that, because Cuevas-Gaspar was not "admitted" to the United States until December 4, 1997, Cuevas-Gaspar could not satisfy the seven-year continuous residence requirement for cancellation of removal. The BIA dismissed the appeal. Cuevas-Gaspar filed a timely petition for review.

## DISCUSSION

### I.   Crime Involving Moral Turpitude

We review de novo the question of whether a state statutory crime constitutes a crime involving moral turpitude. *Carty v. Ashcroft*, 395 F.3d 1081, 1083 (9th Cir. 2005) (citing *Rodriguez-Herrera v. INS*, 52 F.3d 238, 240 n.4 (9th Cir. 1995)).

Cuevas-Gaspar argues that his conviction for being an accomplice to residential burglary does not constitute a crime involving moral turpitude because the offense of burglary encompasses conduct that does not involve moral turpitude. To determine whether a specific crime falls within a particular category of grounds for removability, we apply the categori-

cal and modified categorical approaches set forth in *Taylor v. United States*, 495 U.S. 575 (1990). *See Tokatly v. Ashcroft*, 371 F.3d 613, 622 (9th Cir. 2004); *Gonzalez-Alvarado v. INS*, 39 F.3d 245, 246 (9th Cir. 1994) (applying modified categorical approach to determine whether petitioner's state conviction constituted a crime involving moral turpitude).

## A. Categorical Approach

**[1]** The categorical approach requires us to "make a categorical comparison of the elements of the statute of conviction to the generic definition, and decide whether the conduct proscribed [by the statute] is broader than, and so does not categorically fall within, this generic definition." *Huerta-Guevara v. Ashcroft*, 321 F.3d 883, 887 (9th Cir. 2003). We look "only to the fact of conviction and the statutory definition of the prior offense," and not to the particular facts underlying the conviction. *Id.* The issue is not whether the actual conduct constitutes a crime involving moral turpitude, but rather, whether the full range of conduct encompassed by the statute constitutes a crime of moral turpitude. *See United States v. Castillo-Rivera*, 244 F.3d 1020, 1022 (9th Cir. 2001).

"The phrase 'crime involving moral turpitude' has without exception been construed to embrace fraudulent conduct." *Jordan v. De George*, 341 U.S. 223, 232 (1951). *See Rashta-badi v. INS*, 23 F.3d 1562, 1568 (9th Cir. 1994) (holding that grand theft is a crime involving moral turpitude). In addition, "certain crimes necessarily involving rather grave acts of baseness or depravity may qualify as crimes of moral turpitude even though they have no element of fraud." *Rodriguez-Herrera v. INS*, 52 F.3d 238, 240 (9th Cir. 1995). *See Gonzalez-Alvarado*, 39 F.3d at 246 (holding that incest is a crime involving moral turpitude). Where an act is only statutorily prohibited, rather than inherently wrong, the act generally will not involve moral turpitude. *Beltran-Tirado v. INS*, 213 F.3d 1179, 1184 (9th Cir. 2000) (noting difference

between *malum prohibitum*, an act only statutorily prohibited, and *malum in se*, an act inherently wrong).

**[2]** We have not, thus far, decided whether burglary is a crime involving moral turpitude under the categorical approach set forth in *Taylor*.[3] In *Toro-Romero v. Ashcroft*, 382 F.3d 930 (9th Cir. 2004), we did not decide the issue, but rather, remanded to the BIA to determine whether burglary constituted a crime involving moral turpitude. *Id.* at 936-37. We concluded in *United States v. Becker*, 919 F.2d 568, 573 (9th Cir. 1990), that burglary constitutes a crime of violence for federal sentencing purposes, but did not discuss whether burglary is a crime involving moral turpitude. Although we summarily concluded in *Baer v. Norene*, 79 F.2d 340 (9th Cir. 1935), that the petitioner's convictions for forgery and for burglary in the second degree were offenses that involved moral turpitude, *id.* at 341, we did not analyze whether the full range of conduct covered by the statute falls within the definition of a crime involving moral turpitude. *See Castillo-Rivera*, 244 F.3d at 1022 (explaining the categorical approach). Similarly, the BIA has concluded, in cases predating *Taylor*, that "[b]urglary and theft or larceny, whether grand or petty, are crimes involving moral turpitude." *Matter of De La Nues*, 18 I. & N. Dec. 140, 145 (BIA 1981). In sum, neither this court nor the BIA has addressed the issue of whether, under the *Taylor* categorical approach, burglary is a crime involving moral turpitude.

The BIA has reasoned, however, that an offense involving breaking and entering or trespass may be deemed to involve moral turpitude only if accompanied by the intent to commit

---

[3]The BIA's decision cites to *De La Cruz v. INS*, 951 F.2d 226 (9th Cir. 1991), in support of its conclusion that burglary constitutes a crime involving moral turpitude. In *De La Cruz*, however, we did not address the issue of whether burglary is a crime involving moral turpitude. Rather, we decided the issue of whether an IJ could consider the validity of a state conviction underlying a deportability determination. *Id.* at 228.

a morally turpitudinous act after entry. *See Matter of M*, 2 I. & N. Dec. 721, 723 (BIA 1946); *Matter of G*, 1 I. & N. Dec. 403, 404-406 (BIA 1943). The BIA explained that, for example, pushing ajar the unlocked door of an unused structure and putting one's foot across the threshold would constitute a breaking and entering, but that this was not in and of itself "base, vile, or depraved." *Matter of M*, 2 I. & N. Dec. at 723. The BIA further explained that, because the only remaining element in the statute was the particular crime that accompanies the act of entry, it is this element alone that determines whether the offense was one involving moral turpitude. *Id.* The BIA then reasoned that the crime that accompanies breaking and entering could be any one of the countless state offenses, which could be either misdemeanors or felonies:

> For example, a group of boys opening the unlocked door of an abandoned barn with the intention of playing cards in violation of one of the many New York wagering laws, could all be convicted of third degree burglary. Yet, we do not think that such persons should be deemed to be base, vile or depraved.

*Id.*

**[3]** Cuevas-Gaspar was convicted as an accomplice to the offense set forth in Washington Revised Code § 9A.52.025(1), which states: "A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle." Washington Revised Code § 9A.08.020(3) provides for liability for the conduct of another and states:

> (3)   A person is an accomplice of another person in the commission of a crime if:
>
>> (a)   With knowledge that it will promote or facilitate the commission of the crime, he

    (i)    solicits, commands, encourages, or requests such other person to commit it; or

    (ii)    aids or agrees to aid such other person in planning or committing it.

To establish the elements of the statutory crime of burglary under § 9A.52.025(1), the state need not prove intent to commit a specific crime, but rather, can prove intent to commit any crime. *State v. Cantu*, 98 P.3d 106, 108 (Wash. Ct. App. 2004). Once the state has shown that a person entered the premises unlawfully, the inference arises that the entry was made with intent to commit a crime, and the burden of proof then shifts to the defense to rebut the inference of criminal intent. Wash. Rev. Code § 9A.52.040; *Cantu*, 98 P.3d at 108-109 (concluding that, because the juvenile defendant offered no evidence to rebut the statutory inference of intent upon showing that defendant kicked in his mother's locked bedroom door without her permission, sufficient evidence supported his conviction for burglary).

**[4]** Thus, under Washington law, a person can be guilty of the offense of burglary if he "enters or remains unlawfully in a dwelling" with an "intent to commit a crime." *See Cantu*, 98 P.3d at 108. We agree with the BIA that the act of entering is not itself "base, vile or depraved," and that it is the particular crime that accompanies the act of entry that determines whether the offense is one involving moral turpitude. *See Matter of M*, 2 I. & N. Dec. at 723. Because, under Washington law, an intent to commit *any* crime satisfies the accompanying crime element of burglary, the offense encompasses conduct that falls outside the definition of a crime of moral turpitude.

For example, under Washington law, a person is guilty of the crime of malicious mischief if he or she knowingly and maliciously causes physical damage to the property of another

in an amount exceeding $250. *See* Wash. Rev. Code § 9A.48.080 (setting forth the elements of the crime of malicious mischief). Malicious intent includes the wish to "vex, annoy, or injure" another person and may be inferred from "an act wrongfully done without just cause or excuse, or an act or omission of duty betraying a wilful disregard of social duty." Wash. Rev. Code § 9A.04.110(12). As we noted in *Rodriguez-Herrera v. INS*, 52 F.3d 238 (9th Cir. 1995), "the [malicious mischief] statute's reach . . . include[s] pranksters with poor judgment." *Id.* at 240. We concluded in *Rodriguez-Herrera* that malicious mischief, as defined by § 9A.48.080, does not necessarily involve "an act of baseness or depravity contrary to accepted moral standards" and therefore is not necessarily a crime involving moral turpitude. *Id.*

**[5]** Like the example cited by the BIA in *Matter of M*, 2 I. & N. Dec. at 723, of a group of young boys who enter an abandoned barn intending to play cards, there are numerous other examples of acts that constitute burglary under the Washington statute but that cannot be deemed base, vile, or depraved. *See, e.g.*, *United States v. Chu Kong Yin*, 935 F.2d 990, 1004 (9th Cir. 1991) (concluding that crime of gambling did not necessarily involve moral turpitude). The offense of residential burglary set forth in § 9A.52.025(1) encompasses conduct that does not necessarily involve moral turpitude. We conclude that the offense therefore is not a crime involving moral turpitude under the categorical approach.

## B.   Modified Categorical Approach

**[6]** Because the statute of conviction is broader than the generic definition of the crime, we proceed to the modified categorical approach, which allows us to "look beyond the language of the statute to a narrow, specified set of documents that are part of the record of conviction, including the indictment, the judgment of conviction, jury instructions, a signed guilty plea, or the transcript from the plea proceedings." *Tokatly v. Ashcroft*, 371 F.3d 613, 620 (9th Cir. 2004) (inter-

nal quotation marks omitted). *See Carty v. Ashcroft*, 395 F.3d 1081, 1084 (9th Cir. 2004) ("When a statute is divisible into several crimes, some of which may involve moral turpitude and some not, it is appropriate to examine the 'record of conviction' to determine which part applies to the defendant.").

We do not, however, "look beyond the record of conviction itself to the particular facts underlying the conviction." *Tokatly*, 371 F.3d at 620 (citing *Taylor*, 495 U.S. at 600). The Supreme Court has clarified that, in determining whether a guilty plea to burglary defined by a non-generic statute necessarily admitted elements of the generic offense, our inquiry is limited "to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 125 S. Ct. 1254, 1263 (2005).

**[7]** We must thus determine whether the record of conviction shows that Cuevas-Gaspar pled guilty to elements that constitute a crime involving moral turpitude. We have held that crimes of theft or larceny are crimes involving moral turpitude. *See United States v. Esparza-Ponce*, 193 F.3d 1133, 1136-37 (9th Cir. 1999) (stating in illegal reentry case that petty theft constitutes a crime of moral turpitude); *Rashtabadi v. INS*, 23 F.3d 1562, 1568 (9th Cir. 1994) (concluding that grand theft is a crime of moral turpitude). In his signed plea statement, Cuevas-Gaspar states that, "[o]n March 13, 2002, in Yakima County, I helped another person take property without permission from a residence where no one was home." Because the underlying crime of theft or larceny is a crime of moral turpitude, unlawfully entering a residence with intent to commit theft or larceny therein is likewise a crime involving moral turpitude. We therefore conclude that, because Cuevas-Gaspar admitted in his guilty plea to entering a residence with the intent to steal property from the resi-

dence, his conviction constitutes a crime involving moral turpitude under the modified categorical approach.**⁴**

## II.   Cancellation of Removal

Cuevas-Gaspar attained permanent lawful resident status in 1997. Because his conviction for being an accomplice to burglary in 2002 "stopped the clock," the BIA concluded that Cuevas-Gaspar cannot meet the requirement, under INA § 240A(a)(2), 8 U.S.C. § 1229b(a)(2), that he have resided in the United States continuously for seven years "after having been admitted in any status."**⁵** *See* 8 U.S.C. § 1229b(d)(1); *Toro-Romero*, 382 F.3d at 937 (" 'Continuous residence,' however, 'shall be deemed to end . . . when the alien has committed an offense' involving a crime of moral turpitude that renders him either inadmissible or removable.").

Cuevas-Gaspar asserts, however, that we should adopt our reasoning in *Lepe-Guitron v. INS*, 16 F.3d 1021 (9th Cir. 1994), in which we held that, because a child's domicile follows that of his or her parents, the parents' domicile in the United States is imputed to the parents' unemancipated minor child for purposes of the seven years "lawful unrelinquished domicile" required for discretionary waiver under the now-repealed INA § 212(c). *Lepe-Guitron*, 16 F.3d at 1025-26. Cuevas-Gaspar argues that, similar to the petitioner in *Lepe-*

---

**⁴**Cuevas-Gaspar does not argue that his conviction as an accomplice affects the determination of whether his conviction is for a crime involving moral turpitude. We therefore do not reach this issue. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (explaining that issue not raised and argued in party's opening brief is waived).

**⁵**In its brief, the government argues that Cuevas-Gaspar's "eligibility for cancellation of removal turns on whether Cuevas-Gaspar maintained seven years continuous residence in the United States 'after having been admitted in any status.' " The government does not dispute that Cuevas-Gaspar has been a lawful permanent resident for not less than five years, as required by 8 U.S.C. § 1229b(a)(1).

*Guitron*, his time in the United States as an unemancipated minor residing with his lawfully-admitted parents should count towards the seven years of continuous residence "after having been admitted in any status" required for cancellation of removal. *See* 8 U.S.C. § 1229b(a)(2). Cuevas-Gaspar asserts that his mother attained permanent resident status in 1990, when he was seven years old, and that he resided with his parents in the United States from before that time until the time he was detained. The government urges, and the BIA agreed, that *Lepe-Guitron* is inapplicable here because *Lepe-Guitron* construed the now-repealed § 212(c) of the INA, which required a period of "lawful unrelinquished domicile," whereas cancellation of removal under INA § 240A(a), 8 U.S.C. § 1229b(a), requires a period of residence "after having been admitted in any status."

We apply the two-step inquiry set forth by the Supreme Court in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and ask (1) whether "the statute is silent or ambiguous with respect to the specific issue," and if so (2) whether the agency's interpretation is based on a reasonable, permissible construction of the statute. *Id.* at 842-44; *Espejo v. INS*, 311 F.3d 976, 978 (9th Cir. 2002). We must defer to the BIA's interpretation and application of the immigration laws, unless the BIA's interpretation is "contrary to the plain and sensible meaning of the statute" or frustrates the policy that Congress sought to implement. *Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004); *Randhawa v. Ashcroft*, 298 F.3d 1148, 1151 (9th Cir. 2002). But, "[a]n agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerable less deference' than a consistently held agency view." *Young v. Reno*, 114 F.3d 879, 883 (9th Cir. 1997) (quoting *INS v. Cardozo-Fonseca*, 480 U.S. 421, 446 n.30 (1987)).

## A.   Statutory Language

Applying the first step of the *Chevron* test, we look to the language of the statute. Cancellation of removal under INA § 240A, 8 U.S.C. § 1229b, provides in relevant part:

> The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien —
>
> > (1)   has been an alien lawfully admitted for permanent residence for not less than 5 years,
> >
> > (2)   has resided in the United States continuously for 7 years after having been admitted in any status, and
> >
> > (3)   has not been convicted of any aggravated felony.

8 U.S.C. § 1229b(a). The term "admitted" is defined by the INA as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13).

Section 1229b is silent as to whether a parent's status may be imputed to the parent's unemancipated minor child for purposes of satisfying the requirements of subsections (a)(1) and (a)(2). We therefore proceed to the second step of the *Chevron* test, which requires us to determine whether the BIA's interpretation of the statute is based on a reasonable construction of the statute. *Chevron,* 467 U.S. at 844.

## B.   Statutory Construction

The BIA rejected Cuevas-Gaspar's argument that our holding in *Lepe-Guitron*, which applied to relief under former § 212(c) of the INA, should apply to cancellation of removal

under INA § 240A(a), 8 U.S.C. § 1229b(a). The BIA concluded that, unlike in *Lepe-Guitron*, a parent's period of residence cannot be imputed to the parent's unemancipated minor child for purposes of satisfying the requirement, set forth in § 1229b(a)(2), that the alien have resided in the United States continuously for seven years "after having been admitted in any status."

To determine whether the BIA's interpretation of § 1229b(a) is reasonable, we look to the plain and sensible meaning of the statute, the statutory provision in the context of the whole statute and case law, and to legislative purpose and intent. *See Padash v. INS*, 358 F.3d 1161, 1169-72 (9th Cir. 2004) (applying the tools of statutory construction). Because the parties' arguments, and therefore our analysis, refers to our holding in *Lepe-Guitron*, we begin by summarizing our holding in that case.

### 1. *Lepe-Guitron*

[8] We note that neither the BIA nor any of our sister circuits has decided the issue before us — whether the lawful admission and legal permanent residence of a parent can be imputed to a minor, dependent child to satisfy the continuous residence following admission requirement for cancellation of removal under 8 U.S.C. § 1229b. *See Matter of Blancas-Lara*, 23 I. & N. Dec. 458, 459 (BIA 2002) ("We do not find it necessary to reach the question of imputed residence in this case."). We have held, however, that the lawful residence of a parent can be imputed to the child to satisfy the seven-year "lawful unrelinquished domicile" requirement for the now-repealed relief from deportation known as § 212(c) waiver.

In *Lepe-Guitron*, the petitioner's parents "immigrated to the United States on September 16, 1976, and successfully applied to immigrate Lepe-Guitron, his sister, and one of his brothers." 16 F.3d at 1022. Although his parents and his sister attained permanent resident status two years later, due to a

processing error, Lepe-Guitron did not attain permanent resident status until 1986. *Id.* at 1022-23. In 1989, Lepe-Guitron pled guilty and was convicted in state court of a deportable offense. *Id.* at 1023. Lepe-Guitron argued that he was eligible for relief under INA § 212(c), which provided:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to [various grounds for the exclusion of aliens seeking entry into the United States].

8 U.S.C. § 1182(c) (repealed 1996).

When we rendered our decision in *Lepe-Guitron*, we had interpreted the § 212(c) requirement of seven years of "lawful unrelinquished domicile" in *Castillo-Felix v. INS*, 601 F.2d 459 (9th Cir. 1979), as requiring lawful unrelinquished domicile after admission for permanent residence. *Id.* at 467 ("[T]o be eligible for § 1182(c) relief, aliens must accumulate seven years of lawful unrelinquished domicile *after their admission for permanent residence*.") (emphasis added). Lepe-Guitron had not accumulated seven years of domicile following his admission for permanent residence and therefore argued that his "lawful unrelinquished domicile" should be counted from the date his parents attained permanent resident status because, at that time, he was an unemancipated minor residing with his parents. *Lepe-Guitron*, 16 F.3d at 1024.

We agreed. We noted that the common law definition of "lawful domicile" means the simultaneous existence of lawful presence and the lawful intent to remain. We then reasoned that children are "legally speaking, incapable of forming the necessary intent to remain indefinitely in a particular place" and that a child's domicile therefore follows that of his par-

ents, a conclusion "unremarkable at common law." *Id.* at 1025.

Notably with respect to our analysis here, we observed that other immigration statutes and regulations "giving a high priority to the relation between permanent resident parents and their children lend strength to our analysis." *Id.* We pointed to (1) 8 U.S.C. §§ 1152 and 1153, which provide a visa quota preference for the alien children of legal permanent residents and citizens; (2) 8 U.S.C. § 1182(a)(6)(E)(ii), which provides a waiver of excludability for certain immigrants who have helped their alien children enter the United States illegally, in the interest of family reunification; and (3) 8 C.F.R. § 245.1(d)(vi)(B)(1), which then provided that a foreign-resident child of a permanent resident alien is given the same priority date and preference category as that of his or her parents.[6] *Lepe-Guitron*, 16 F.3d at 1025.

We therefore concluded that an unemancipated minor residing with his parents shares the same domicile as that of his parents, and that the petitioner's period of lawful domicile therefore began when his parents attained permanent resident status while he was a child.[7] *Id.* at 1025-26. We explained that, on remand, if Lepe-Guitron can show that his parents have accrued seven years of lawful unrelinquished domicile after having been lawfully admitted for permanent residence, then Lepe-Guitron should be considered likewise to have accrued seven years of continuous residence after having been

---

[6]Although the citation in *Lepe-Guitron* is to § 245.1(d)(vi)(B)(1), it appears that the citation should have been to 8 C.F.R. § 245.(d)(2)(vi)(B)(1), which has been amended since *Lepe-Guitron* was decided in 1994.

[7]The Second Circuit has agreed, for purposes of § 212(c) relief, that "[a] minor's domicile is the same as that of its parents, since most children are presumed not legally capable of forming the requisite intent to establish their own domicile." *Rosario v. INS*, 962 F.2d 220, 224 (2d Cir. 1992). The court held that, for purposes of § 212(c) relief, an unemancipated minor's domicile is the same as that of his parents, even if the minor is not physically present in the United States. *Id.*

lawfully admitted for permanent residence and therefore eligible for § 212(c) relief. *Id.* at 1026.

## 2. Statutory Provision in Context

We turn now to an application of the tools of statutory construction in order to determine whether the BIA's interpretation of § 1229b(a) as being unamenable to imputation is a reasonable one. *See Padash*, 358 F.3d at 1169. In analyzing the statutory provision in the context of the governing statute as a whole, we presume congressional intent to create a coherent regulatory scheme. *Id.* at 1170 (citing *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-33 (2000)). "In this regard, we must 'mak[e] every effort not to interpret [the] provision [at issue] in a manner that renders other provisions of the same statute inconsistent, meaningless, or superfluous.' " *Id.* at 1170-71 (quoting *Boise Cascade Corp. v. EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991)).

Looking at the statute in context, we are instructed by our observation in *Lepe-Guitron* that our immigration statutes and regulations are replete with provisions "giving a high priority to the relation between permanent resident parents and their children." *See Lepe-Guitron*, 16 F.3d at 1025. We also note that both the BIA and this court repeatedly have held that a parent's status, intent, or state of mind is imputed to the parent's unemancipated minor child in many areas of immigration law, including asylum, grounds of inadmissibility, and legal residency status.

For example, in *Vang v. INS*, 146 F.3d 1114 (9th Cir. 1998), we observed that, in many areas of immigration law, the status of the parent is imputed to the minor child. *Id.* at 1116. We noted that, under INS regulations, the child of a refugee or asylee is generally entitled to the same status as his or her parent. *Id.* (citing 8 C.F.R. §§ 207.1(e) and 208.21(a)). We also noted that in *Lepe-Guitron*, we "followed the 'unremarkable' common law concept 'that a child's domicile fol-

lows that of his or her parents' in the 212(c) context." *Id.* (quoting *Lepe-Guitron*, 16 F.3d at 1025). We explained that "it would be unreasonable to hold an adolescent responsible for arranging or failing to arrange permanent resettlement." *Id.* (internal quotation marks and citation omitted). We then concluded that "[w]e follow the same principle in determining whether a minor has firmly resettled in another country, *i.e.*, we look to whether the minor's parents have firmly resettled in a foreign country before coming to the United States, and then derivatively attribute the parents' status to the minor." *Id.* at 1116-17.

Similarly, in *Senica v. INS*, 16 F.3d 1013 (9th Cir. 1994), we imputed a parent's knowledge or state of mind to the parent's minor children with respect to grounds for inadmissibility. In *Senica*, the INS commenced deportation proceedings against Maria Senica, her husband, and their two children, as having been excludable at entry and for having entered the United States by fraud or by willfully misrepresenting a material fact. *Id.* at 1014. Senica had entered the United States with her children under a statutory preference for spouses and children of lawful permanent residents. Senica admitted that, at the time, she knew that her spouse, Rodrigo Senica, had lied about his status at the time of his entry and that the children therefore were not eligible for entry on the grounds claimed. *Id.* The children conceded deportability on the basis of entry without valid documents, and applied for waivers under 8 U.S.C. § 1182(k) as immigrants who were unaware of their ineligibility for admission and who could not have discovered the ineligibility by the exercise of reasonable diligence. *Id.* We concluded that the BIA was correct in imputing the parent's knowledge of ineligibility for admission to the children. *Id.* at 1015. We observed that "[t]he BIA has imputed a parent's knowledge or state of mind to a child in other situations," and reasoned that "[t]he BIA's decision here was not a departure from its previous practice of imputing a parent's state of mind, or failure to reasonably investigate, to an unemancipated minor child." *Id.* at 1015-16. We also

pointed out the "illogical consequences" that would flow from a contrary decision, reasoning that parents of minor children could file fraudulent applications for admission on behalf of their minor children and subsequently, upon discovery of the fraud, become derivatively eligible for waiver of deportation by asserting that the children were innocent of the parents' fraud. *Id.* at 1016.

Finally, we note that the BIA has commonly imputed a parent's abandonment of permanent legal resident status to the parent's minor children. *See Matter of Huang*, 19 I. & N. Dec. 749, 750 n.1 (BIA 1988); *Matter of Zamora*, 17 I. & N. Dec. 395, 396 (BIA 1980); *Matter of Winkens*, 15 I. & N. Dec. 451, 452 (BIA 1975). In *Zamora*, the BIA held that the voluntary and intended abandonment of lawful permanent resident status by the parent of an unemancipated minor child is imputed to the child, who is deemed also to have abandoned his lawful permanent resident status. *Zamora*, 17 I. & N. at 396. Likewise, in *Winkens*, the BIA reasoned that the parents' abandonment of their lawful permanent resident status was imputed to their minor child "who was subject to their custody and control." *Winkens*, 15 I. & N. Dec. at 452. The BIA further reasoned that the child "had gained lawful permanent resident status through them, and he lost it when they abandoned their residence and took him with them." *Id.*

Here, the BIA concluded that because § 1229b(a)(2) requires residence "after having been admitted," the commonly applied principle of imputation does not apply here as it did with respect to former § 212(c) waiver, which required "lawful unrelinquished domicile." Specifically, the BIA concluded that, because "admitted" is a term of art, defined by the INA as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer," 8 U.S.C. § 1101(a)(13), a mother's adjustment of status to legal permanent resident cannot be imputed to her unemancipated minor child because unlike domicile, which depends on intent or capacity, "admission" does not depend on either

intent or capacity, but rather, on inspection and authorization by an immigration officer.

**[9]** While former § 212(c) and § 1229b(a) do indeed use different terms with respect to the seven-year residency requirement for relief, for the following reasons, we conclude that, in the context of the statute as a whole, this difference does not justify a departure from the INA's policy of putting a high priority on relations between permanent legal residents and their children or from the BIA's consistent interpretation of the immigration laws and regulations as allowing for imputation of a parent's status to unemancipated minor children. First, the BIA's refusal to impute a parent's permanent resident status here conflicts with the BIA's consistent willingness to impute a parent's intent, state of mind, and status to a child and we therefore afford less deference to the BIA's interpretation. *See Young*, 114 F.3d at 883 (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 n.30 (1987)).

Second, a close examination of our holding in *Lepe-Guitron* and of the definition of "lawful unrelinquished domicile" demonstrates that the difference between "domicile" and residence "after having been admitted in any status" is not, as the BIA asserts, so great as to be dispositive — an observation that is confirmed by the history of § 1229b(a), as discussed in the following section. In *Lepe-Guitron*, the petitioner had lived in the United States for 10 years prior to his attainment of permanent resident status and for 13 years prior to his conviction for a drug crime. 16 F.3d at 1022-23. But because we had interpreted § 212(c) as requiring seven years of "lawful unrelinquished domicile" *after admission for permanent residence*, *Castillo-Felix*, 601 F.2d at 467, Lepe-Guitron could satisfy that requirement only through the imputation of his mother's adjustment to permanent resident status 11 years prior to his conviction.**[8]** *See Lepe-Guitron*, 16 F.3d at 1022-

---

**[8]**Adjustment of status to that of permanent resident constitutes lawful admission to the United States. *See* 8 U.S.C. § 1255(a) (stating that the

24. Thus, in holding that a parent's "lawful unrelinquished domicile" is imputed to the parent's minor children, we necessarily held that the parent's *admission* for permanent residence was also imputed to the parent's minor children.

**[10]** In sum, the BIA's interpretation of the § 1229b(a)(2) requirement runs contrary to both our reasoning in *Lepe-Guitron* — which necessarily held that a parent's admission to permanent resident status is imputed to the child — and to the BIA's own longstanding policy of imputation, and therefore is unreasonable. Because the BIA's interpretation is unreasonable, we need not defer to it. *See Chevron*, 467 U.S. at 842-44 (explaining that we defer to the agency's interpretation of a statute so long as it is reasonable); *Navarro-Aispura v. INS*, 53 F.3d 233, 235-36 (9th Cir. 1995) (declining to defer to agency's decision where not supported by a rational explanation).

### 3.  Legislative Purpose and Intent

Our conclusion is consistent with congressional intent, as revealed by an examination of the purpose underlying the statutory scheme. *See United States v. Buckland*, 289 F.3d 558, 565 (9th Cir. 2002) (en banc) (stating that the court should look to legislative purpose where Congress' intent cannot be determined from a plain reading).

INA § 240A, 8 U.S.C. § 1229b, was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996). IIRIRA amended the INA in relevant part to expand the definition of aggravated felonies, to provide for

Attorney General may adjust the status of an alien "to that of an alien lawfully admitted for permanent residence"); *Firestone v. Howerton*, 671 F.2d 317, 320 n.5 (9th Cir. 1982) (observing that an applicant for adjustment of status is assimilated to the position of application for entry and thus subject to eligibility criteria for admission).

expedited removal of aliens convicted of aggravated felonies, and to restrict the forms of relief available to aliens convicted of certain crimes. *See, e.g.*, *INS v. St. Cyr*, 533 U.S. 289, 297 (2001) (explaining that IIRIRA repealed § 212(c) and replaced it with 8 U.S.C. § 1229b, which "gives the Attorney General the authority to cancel removal for a narrow class of . . . aliens . . . . So narrowed, that class does not include any-one previously 'convicted of any aggravated felony' "). Sub-section (a) of § 240A applies to aliens with legal permanent resident status, and subsection (b) applies to nonpermanent residents. *Compare* 8 U.S.C. § 1229b(a) ("Cancellation of removal for certain permanent residents.") *with* 8 U.S.C. § 1229b(b) ("Cancellation of removal and adjustment of sta-tus for certain nonpermanent residents."). Congress explained that "[n]ew section 240A establishes revised rules for the type of relief that is currently available to excludable and deport-able aliens under section 212(c) and 244(a)-(d)." H.R. Conf. Rep. 104-828, at 213 (1996). Congress further explained that "[s]ection 240A(c) . . . is intended to replace and modify the form of relief now granted under section 212(c) of the INA." *Id.*

While it is well-established, from both the plain language of the statute and legislative history, that Congress replaced former § 212(c) with § 1229b(a) in part to render relief from removal unavailable to legal permanent residents who had been convicted of an aggravated felony, *see St. Cyr*, 533 U.S. at 297, neither the language of the statute nor the legislative reports provide any insight into why Congress changed the residency requirement from the "lawful unrelinquished domi-cile of seven consecutive years" under former § 212(c) to the two-part requirement under § 1229b(a) that the alien "(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, [and] (2) has resided in the United States continuously for 7 years after having been admitted to any status." 8 U.S.C. § 1229b(a). The history of the courts' and the BIA's interpretation of former § 212(c) reveals, however, that the change in residency requirement was intended to clear

up a longstanding disagreement between the various courts of appeals and the BIA regarding the type of status necessary to qualify for relief under former § 212(c).

The BIA had long held that the seven years of domicile required by § 212(c) must follow admission as a lawful permanent resident. *See, e.g.*, *Matter of S.*, 5 I. & N. Dec. 116, 117-18 (BIA 1953). Under this interpretation, time spent in the United States in another legal immigration status — for example, temporary status — did not count towards the seven-year requirement. *See id.* Over time, however, various courts of appeals disagreed. Initially, the Second Circuit held, based on both the statutory language and legislative history, that the seven years of domicile need not occur after admission for permanent legal resident status. *See Lok v. INS*, 548 F.2d 37, 39-41 (2d Cir. 1977). The Seventh Circuit and the Fifth Circuit subsequently adopted the Second Circuit's approach. *See White v. INS*, 75 F.3d 213, 216 (5th Cir. 1996); *Castellon-Contreras v. INS*, 45 F.3d 149, 152-54 (7th Cir. 1995). In contrast, the Fourth and Tenth Circuits accepted the BIA's interpretation in all respects. *See Michelson v. INS*, 897 F.2d 465, 469 (10th cir. 1990); *Chiravacharadhikul v. INS*, 645 F.2d 248, 249 (4th Cir. 1981).

As discussed above, the Ninth Circuit initially agreed with the BIA. We deferred to the BIA in *Castillo-Felix*, and held that domicile must follow admission for permanent resident status. *Castillo-Felix*, 601 F.2d at 467. Subsequently, however, we modified our position to allow aliens granted temporary resident status under the amnesty provisions of the Immigration Reform and Control Act of 1986 ("IRCA"), 8 U.S.C. § 1255a, to count the period as a temporary resident toward the seven-year domicile requirement. *See Ortega de Robles v. INS*, 58 F.3d 1355, 1360-61 (9th Cir. 1995).

Meanwhile, the BIA continued to maintain the position that aliens who acquired legal permanent resident status through the legalization provisions of IRCA — which required an ini-

tial period of temporary resident status — could not count the years spent in temporary status toward the seven-year domicile requirement. *See Matter of Ponce de Leon-Ruiz*, 21 I. & N. Dec. 154, 159 (BIA 1996) (reasoning that there was no controlling Eighth Circuit case to the contrary). The BIA did, however, apply our decision in *Ortega de Robles*, and in a case decided on the same day as *Matter of Ponce de Leon-Ruiz*, made an exception to its position and adopted the *Ortega de Robles* rule only with respect to cases arising in the Ninth Circuit. *See Matter of Cazares*, 21 I. & N. Dec. 188, 193 (BIA 1996).

In enacting the new cancellation of removal provision, Congress resolved the conflicting interpretations of "unrelinquished lawful domicile" by requiring five years of status as a permanent resident while at the same time recognizing that the alien could count a period spent in non-permanent status toward a total period of residence of seven years. *See* 8 U.S.C. § 1229b(a). Viewed in the context of the conflicting interpretations that preceded Congress' enactment of § 1229b, it is clear that the requirement of continuous residence for "7 years after having been admitted in any status," 8 U.S.C. § 1229b(a)(2) is not, as the BIA asserts, intended to narrow the prior residency rule of § 212(c) by imposing a new, more onerous requirement of inspection and authorization by an immigration officer. *See* 8 U.S.C. § 1101(a)(13) (defining "admitted" as "the lawful entry of the alien . . . after inspection and authorization by an immigration officer"). Rather, the language of the new two-part requirement apparently was designed to clear up prior confusion and to strike a balance between the conflicting interpretations of the courts of appeals and the BIA by counting a limited period of time spent in non-permanent status while still requiring at least five years of permanent resident status.

Our observations are underscored by the fact that Congress, in enacting the cancellation of removal provision, imposed a seemingly less onerous residency requirement on non-

permanent residents, requiring only that the alien "ha[ve] been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." 8 U.S.C. § 1229b(b)(1)(A). If we were to construe the term "admitted," in § 1229b(a)(2) as barring imputation because "admitted" is defined as requiring entry with inspection and authorization, we would in effect be requiring of legal permanent residents more than the statute requires of non-permanent residents, thus frustrating Congress's well-established policy of affording aliens with legal permanent resident status more benefits than non-permanent residents under the INA. Just as we accord less deference to an agency interpretation that conflicts with an earlier, consistently-held agency view, we also do not defer to an agency interpretation that frustrates the policy that Congress sought to implement. *See Simeonov*, 371 F.3d at 535; *Randhawa*, 298 F.3d at 1151. Our interpretation of the § 1229b(a)(2) requirement as allowing for imputation of a parent's status to the parent's minor child is consistent with Congress' apparent intent to address the BIA's restrictive interpretation of the "domicile" requirement of former § 212(c).

Finally, we note that our interpretation adheres to the general canon of construction that resolves ambiguities in favor of the alien. *See, e.g.*, *Cardoza-Fonseca*, 480 U.S. at 449 (observing that there is a "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien"); *Hernandez v. Ashcroft*, 345 F.3d 824, 840 (9th Cir. 2003) (explaining that, in the immigration context, "doubts are to be resolved in favor of the alien"). In *Matter of Vizcaino*, 19 I .& N. Dec. 644 (BIA 1988), the BIA observed that, where the expansion of relief "clearly was intended as a generous provision," the provision "should . . . be generously interpreted." *Id.* at 648. Here, Congress' adoption of a two-step residency requirement in place of the former one-step "unrelinquished lawful domicile" requirement clearly was intended as a generous provision — allowing

legal permanent residents to count two years of residence in the United States in non-permanent status toward the requirement — and therefore should be interpreted to at least allow for the imputation that we held in *Lepe-Guitron* was required under former § 212(c). Allowing aliens like Cuevas-Gaspar to attempt to qualify for one of only 4,000 grants of relief under § 1229b does not run counter to the general restrictiveness of the post-IIRIRA INA.[9] Rather, by allowing imputation, we merely implement the countervailing and co-equal congressional policy of recognizing that presence in the United States of an extended length gives rise to such strong ties to the United States that removal would result in undue hardship. *See* S. Rep. No. 1515, 81st Cong., 2d Sess. 383 (1950) (discussing the purpose of enacting former § 212(c) relief).

[11] For the foregoing reasons, we hold that, for purposes of satisfying the seven-years of continuous residence "after having been admitted in any status" required for cancellation of removal under 8 U.S.C. § 1229b(a), a parent's admission for permanent resident status is imputed to the parent's unemancipated minor children residing with the parent.

## CONCLUSION

Accordingly, Cuevas-Gaspar's petition for review is granted with respect to his eligibility for cancellation of removal, and the matter is remanded to the BIA for further proceedings consistent with this opinion.

**PETITION FOR REVIEW GRANTED.**

---

[9]The Attorney General may grant cancellation of removal to only 4,000 aliens per fiscal year, under the numerical constraints enacted by IIRIRA. 8 U.S.C. § 1229b(e)(1). In 1997, the first year that the quota was in effect, the limit was reached in the month of February. *See* Stephen H. Legomsky, *Immigration and Refugee Law and Policy* 465 (1997).

FERNANDEZ, Circuit Judge, dissenting:

I cannot agree with the proposition that burglary of a dwelling is not necessarily a crime of moral turpitude. Washington's burglary statute punishes anyone who, "with intent to commit a crime against a person or property therein . . . enters or remains unlawfully in a dwelling other than a vehicle." Wash. Rev. Code § 9A.52.025(1). A dwelling is a "building or structure . . . which is used or ordinarily used by a person for lodging." *Id.* § 9A.04.110(7). Since 1935, Ninth Circuit cases have consistently treated burglary as a crime involving moral turpitude. *See Baer v. Norene*, 79 F.2d 340, 341 (9th Cir. 1935); *see also, e.g.*, *Alberto-Gonzalez v. INS*, 215 F.3d 906, 908 n.5 (9th Cir. 2000); *Perez v. INS*, 116 F.3d 405, 407 (9th Cir. 1997); *de La Cruz v. INS*, 951 F.2d 226, 228 (9th Cir. 1991); *Mahini v. INS*, 779 F.2d 1419, 1421 (9th Cir. 1986). I have found no case from this or any other circuit holding otherwise. *See, e.g.*, *Sierra-Reyes v. INS*, 585 F.2d 762, 763 (5th Cir. 1978); *United States v. Stromberg*, 227 F.2d 903, 905 (5th Cir. 1955); *Rudolph v. United States ex rel. Rock*, 6 F.2d 487, 490 (D.C. Cir. 1925). In fact, in *Ye v. INS*, 214 F.3d 1128, 1134 n.5 (9th Cir. 2000), this court said that even vehicle burglary,[1] which is inherently less intrusive than burglary of a dwelling, is a crime involving moral turpitude. Hence, even if burglary were not a malum in se crime—which it clearly is—the law of this circuit would dictate a finding of a crime of moral turpitude. *See Beltran-Tirado v. INS*, 213 F.3d 1179, 1184-85 (9th Cir. 2000) (indicating that malum in se crimes are crimes involving moral turpitude); *see also United States v. Barker*, 514 F.2d 208, 266 n.70 (D.C. Cir. 1975) (saying that "[b]urglary is clearly malum in se"); *Rudolph*, 6 F.2d at 490 (same).

Requiring the BIA to look beyond the burglary conviction to Cuevas' intent is unnecessary and improper. This is not a

---

[1] The illegal entry of a vehicle with the intent to commit a felony therein. Cal. Penal Code § 459.

case involving burglary of a vending machine, a boat, a commercial establishment, or any other uninhabited structure. It involves the burglary of a residence. Whatever specific crime Cuevas intended to commit once inside the dwelling,[2] his illegal presence alone was base, or depraved and contrary to the accepted rules of morality. *Grageda v. INS*, 12 F.3d 919, 921 (9th Cir. 1993). The Supreme Court has declared that:

> The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant . . . who comes to investigate. And the offender's own awareness of this possibility may mean that he is prepared to use violence if necessary to carry out his plans or to escape.

*Taylor v. United States*, 495 U.S. 575, 588, 110 S. Ct. 2143, 2153, 109 L. Ed. 2d 607 (1990); *cf. United States v. M.C.E.*, 232 F.3d 1252, 1255-56 (9th Cir. 2000) (applying a categorical approach to hold that residential burglary is a crime of violence because of the risk of a violent confrontation with the occupant); *United States v. Becker*, 919 F.2d 568, 573 (9th Cir. 1990) (saying that "[t]he confluence of common sense and precedent lead to the conclusion that the unauthorized daytime entry of the dwelling of another with the intent to commit a larceny or any felony carries with it a substantial risk that force will be used against the person or property of another"). " 'The fact that [a burglar] may be contemplating a minor offense will be no solace to those who may reasonably fear the worst and who may react with measures that may well escalate the criminal purposes of the intruder.' " *M.C.E.*, 232 F.3d at 1256 n.5 (quoting Model Penal Code § 221.1 cmt. 3(c), at 75 (1980)). Clearly, the intrusion into someone's home with the intent to commit a crime therein is

---

[2]In fact, we know from the Plea Agreement that Cuevas admitted that he "helped another person take property without permission" from the home.

a categorically depraved act. Thus, the majority improperly encumbers the Immigration Judges with the task of determining the facts underlying a conviction for burglary of a dwelling—a job often impossible given the scant facts in many records of conviction. *See Shepard v. United States*, 544 U.S. \_\_\_, \_\_\_, 125 S. Ct. 1254, 1260-63, 161 L. Ed. 2d 205 (2005). Still, it does ultimately decide that the crime here was one of moral turpitude. Of course, I agree that it was.

However, we again part company on the question of cancellation of removal. Cuevas seeks cancellation of his removal by relying on 8 U.S.C. § 1229b(a) (INA § 240A(a)). That statute allows the Attorney General to cancel the removal of certain permanent residents if the following conditions are met: (1) the alien has been "lawfully admitted for permanent residence for not less than 5 years," (2) the alien "has resided in the United States continuously for 7 years after having been admitted in any status," and (3) the alien "has not been convicted of any aggravated felony." *Id.* The BIA found that Cuevas failed the second requirement because he had been admitted for only a little over four years before he committed burglary.[3] I agree.

Cuevas argues that because he was a minor when his mother achieved lawful permanent resident (LPR) status in December, 1990, his mother's LPR date should be imputed to him, which would give him more than eleven years of continuous residence after admission and satisfy part (2). For that proposition, Cuevas relies on a prior case. *See Lepe-Guitron v. INS*, 16 F.3d 1021 (9th Cir. 1994). He claims that because *Lepe-Guitron* imputed the parents' "lawful unrelinquished

---

[3]If an alien is being removed for committing a crime, the period of continuous residence ends at the time the crime was committed. 8 U.S.C. § 1229b(d)(1). Cuevas clearly satisfies part (1). He was lawfully admitted for permanent residence on December 4, 1997, and was issued a notice to appear on March 18, 2003. He satisfies part (3) because he was sentenced to less than one year for his crime of burglary. *See* 8 U.S.C. § 1101(a)(43)(G).

domicile" to a minor child, this panel should impute a mother's lawful admission date to her minor son. I decline to do so.

*Lepe-Guitron* does not apply to Cuevas' case. There, we interpreted INA § 212(c), which, prior to its repeal in 1997,[4] allowed cancellation of deportation for aliens who had maintained "a lawful unrelinquished domicile of seven consecutive years." 8 U.S.C. § 1182(c) (1997). We reasoned that because a minor is not legally capable of forming the intent necessary to establish domicile, his or her legal domicile must be determined by his custodial parents. *Lepe-Guitron*, 16 F.3d at 1025. Moreover, we emphasized that Lepe-Guitron, "legally entered the United States with his parents, [and] was always legally within the country . . . ." *Id.* at 1024. This, we held, was the pivotal reason for us to stray from precedent and impute his parents' status to him. *Id.* (contrasting *Castillo-Felix v. INS*, 601 F.2d 459, 461 (9th Cir. 1979)).

That does not help Cuevas. First, the new cancellation of removal statute contains no domicile requirement. Instead, it requires seven years of *residence* after having been admitted in any status. 8 U.S.C. § 1229b(a)(2). Residence contains no element of subjective intent. *See* 8 U.S.C. § 1101(a)(33) ("The term 'residence' means place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent."). Thus, unlike *Lepe-Guitron*, there is no legal reason for us to turn to his parents to determine Cuevas' intent. Second, Cuevas readily admits that he was not legally admitted until he obtained LPR status in December, 1997. "Admitted" as used in § 240A means "the *lawful* entry . . . into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). Thus, a necessary element of the *Lepe-Guitron* decision is absent here.

---

[4]Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, Div. C, Tit. III, § 304(b), 110 Stat. 3009.

Without *Lepe-Guitron*, there is no precedent to help Cuevas. Instead, he is left with a statute that could not be more clear. It requires seven years of residence subsequent to admission; yet, by Cuevas' own concession, he committed burglary just four years and three months after being admitted. Even if one could argue that the statute is ambiguous, the BIA's interpretation is quite reasonable, and to that we must defer. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424, 119 S. Ct. 1439, 1445, 143 L. Ed. 2d 590 (1999); *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-45, 104 S. Ct. 2778, 2781-83, 81 L. Ed. 2d 694 (1984). Thus the BIA correctly determined that Cuevas is ineligible for cancellation of removal under 8 U.S.C. § 1229b(a).

The majority's concern for aliens who have been here a long time, even residential burglars like Cuevas, has caused it to find a path that may allow Cuevas an opportunity to stay in this country. But Congress has shown more concern for his victims than for him and has provided that our society need not abide such as he. It is not for us to listen to the susurrant promptings of our own convictions rather than the stentorian proclamations of the legislature.

Thus, I respectfully dissent.